```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>Colleen Perry</u>

    v.                                Civil No. 18-cv-1190-JD
                                                Opinion No. 2019 DNH 084

<u>Insys Therapeutics, Inc.</u>

<u>O R D E R</u>

Colleen Perry brings claims against Insys Therapeutics, Inc. that arise from Insys's actions to induce Physician Assistant Christopher Clough to prescribe Subsys, an opioid manufactured by Insys, to Perry. Insys moves to dismiss Perry's claims on the grounds that they are barred by the statute of limitations and that she fails to adequately allege fraud and a civil conspiracy.[1] Perry objects.

<u>Standard of Review</u>

A motion under Federal Rule of Civil Procedure 12(b)(6) seeks to dismiss on the ground that the plaintiff fails "to state a claim on which relief can be granted." A motion to

---

[1] The court notes that Insys provides all citations to sources and authorities in footnotes rather than in the body of its memorandum. That is contrary to the usual practice in this district. <u>See</u> LR 5.1(a); <u>cf.</u> The Bluebook; A Uniform System of Citation R. 1.1(a), at 57 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015) (instructing that citations are provided in footnotes for law review pieces). Here, citations should be included in the body of the filing, following the text they support.

dismiss may be based on a defense that the claims are barred by the statute of limitations. Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014). To decide the motion, the court accepts as true all of the properly pleaded facts and draws reasonable inferences in favor of the nonmoving party. Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018).

Background

Colleen Perry had pain in both knees caused by a prior injury. Beginning in 2013, she was treated at the PainCare Clinic in Somersworth, New Hampshire. Physician Assistant Christopher Clough treated her at PainCare with numerous opioid medication injections.

A. Perry's Treatment with Subsys

In June of 2013, Clough told Perry that he had a new miracle drug for her treatment. When Perry protested that she was doing well on her current medication, Clough told her that the new drug, Subsys, was much better and persuaded her to switch. Clough prescribed Subsys, at the dosage of 400 mcg, and had the drug sent to Perry by FedEx from a company called Lindencare in New York. Clough continued to prescribe other opioid medications for Perry to use along with Subsys.

Clough increased Perry's Subsys dose in July of 2013 to 800 mcg. In September of 2013, he increased the dose to 1200 mcg every four hours. Clough continued to increase the dose, without any medical justification, until Perry was taking 1600 mcg every four hours in February of 2014.

As a result, Perry became dependent on Subsys. Several times, she lost consciousness and had to be revived by her husband who thought she had stopped breathing. On other occasions she was in a "zombie like state" and even comatose. She fell asleep at work, at dinner, and while having conversations. Perry told Clough she could not tolerate such high doses of Subsys and that the drug was causing her to pass out. She asked him to reduce the dose. Despite her concerns, Clough continued to prescribe Subsys at 1600 mcg every four hours until November of 2014.

In November of 2014, Clough cut the dose of Subsys in half, which caused Perry to have withdrawal symptoms. Perry called Clough's office to report the symptoms. Clough told Perry that he was leaving the practice to work for his mother and to go back to school. In reality, Clough was under investigation by the New Hampshire Board of Medicine. His license was suspended in 2015 and revoked in 2016. A new physician at Pain Care attempted to wean Perry off of Subsys beginning in December of 2014. She suffered extreme symptoms of withdrawal.

B.  Subsys and Insys Therapeutics

Subsys, which is manufactured by Insys Therapeutics, is a sublingual fentanyl spray.  Perry alleges that Subsys is classified as a schedule II substance, which is more powerful than morphine or heroin.  The FDA approved Subsys in January of 2012 for treatment of breakthrough cancer pain in adults who had become tolerant of other opioid medications.  The approved dose was no more than 100 mcg.  Because of its potency and the risk of misuse, addiction, and overdose, the FDA imposed rigorous controls on prescribing and dispensing Subsys.

The New Hampshire Attorney General's office began an investigation into Clough's dealings with Insys.  The office learned that 84% of the Subsys prescriptions in New Hampshire were written by Clough in 2013 and 2014.  Clough was one of the highest prescribers of Subsys in the country and was the highest prescriber in New Hampshire.

The Attorney General's office also learned that Insys paid Clough $44,000 to promote Subsys at speaking events, which were shams.  The events actually were social gatherings at high end restaurants for Clough's family and friends, which were paid for by Insys sales representatives.  The sales representatives forged the guest lists to inflate the numbers of attendees.  Clough also spoke at Insys programs during 2013 and 2014, called

the "Speakers Bureau," to promote Subsys. Clough was paid for participating in those events.

Insys sales representatives were paid bonuses based on the amount of Subsys they sold. Insys completed forms for prescribers to induce prescribers and insurance companies to prescribe and pay for Subsys. Insys had its sales representatives remove Perry's records from Clough's office in order to deceive Perry's insurer into paying for Subsys even though Perry had not been diagnosed with cancer.

When Clough was notified in August of 2014 that the New Hampshire Board of Medicine was investigating his prescription practices, he informed Insys that he would no longer participate in their speaker program. Federal authorities arrested Clough in March of 2017 for receiving financial kickbacks in exchange for prescribing Subsys. He was convicted in December of 2018 on charges of conspiracy to pay and receive kickbacks and receiving kickbacks.[2]

C. <u>Perry Learns of Alleged Scheme</u>

One of Perry's doctors told her in September of 2018 that Clough's supervising physician at PainCare had been disciplined

---

[2] <u>United States v. Clough</u>, 17-cr-37-JL (D.N.H. Dec. 18, 2018)

for failing to properly supervise Clough.  Before that, Perry was unaware of the investigation into Clough's prescribing practices and his relationship with Insys.  Perry then researched Clough on the internet and discovered that he had been arrested and that Insys had been involved in a fraudulent scheme to bribe Subsys prescribers.  Perry also read about lawsuits against Insys.

Perry filed her complaint against Insys on December 19, 2018.  She then filed an amended complaint in which she alleges claims for fraud, Count I; negligence, Count II; violation of the New Hampshire Consumer Protection Act, Count III; and civil conspiracy, Count IV.

## Discussion

Insys moves to dismiss all four claims on the ground that they are time barred.  Insys also moves to dismiss the fraud and civil conspiracy claims on the ground that no cognizable cause of action is alleged.  Perry objects to the motion.

I. Timeliness

Insys asserts that Perry should have known about her alleged injury and Insys's connection to that injury by March of 2015 at the latest.  In response, Perry acknowledges that her

treatment with Subsys, her injuries caused by over prescription, and Insys's actions to induce Clough to over prescribe Subsys all occurred beyond the three-year limitation period.  She argues, however, that under the discovery rule, she did not know of the causal relationship between her injuries and Insys's actions until September of 2018 and, therefore, her claims are not untimely.  Perry also argues that the time is tolled because Insys fraudulently concealed its involvement in the bribery scheme with Clough.

Under RSA 508:4, I, as is pertinent for this case, "all personal actions, . . . may be brought only within 3 years of the act or omission complained of."  An exception to that time limit is also provided so that "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of."  RSA 508:4, I.  For purposes of the claim under RSA 358-A, transactions are exempt from liability if they were "entered into more than 3 years prior to the time the plaintiff knew, or reasonably should

have known, of the conduct alleged to be in violation of this chapter."  RSA 358-A:3, IV-a.[3]

The defendant bears the initial burden to show that the action was not brought within three years of the underlying events.  Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010). If that burden is met, the plaintiff bears the burden of showing that the time is tolled by operation of the discovery rule or fraudulent concealment.  Fuller Ford, Inc. v. Ford Motor Co., 2001 WL 920035, at *6 (D.N.H. Aug. 6, 2001).

In this case, Perry filed her complaint in state court in October of 2018.  Insys's alleged kickback and bribery scheme with Clough and Clough's prescription of Subsys had ended by October of 2015, three years before the complaint was filed. Therefore, the issue for purposes of the motion to dismiss is whether the discovery rule or the fraudulent concealment rule tolls the limitation period.

A.  Discovery Rule

The discovery rule has two parts.  "First, a plaintiff must know or reasonably should have known that [she] has been injured; and second, a plaintiff must know or reasonably should

---

[3] In its motion to dismiss, Insys does not address the separate statute of limitations for the Consumer Protection Act. Perry does not raise that issue in response.  Therefore, the court will use the RSA 508:4 analysis for all three claims.

8

have known that [her] injury was proximately caused by the conduct of the defendant." Beane, 160 N.H. at 713. Therefore, the discovery rule will apply to toll the limitations period unless the plaintiff knew or should have known of her injury AND knew or should have discovered that the defendant caused her injury. Id. "[A] plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule." Id.; accord Lamprey v. Britton Constr., Inc., 163 N.H. 252, 257 (2012). For purposes of the discovery rule, whether the plaintiff exercised reasonable diligence is a question of fact. Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638 (1993).

Because Perry filed her complaint on December 19, 2018, the three-year limitation period began on December 20, 2015. Perry's allegations show that Clough's over prescription of Subsys caused her injury before December of 2015. It is important in this case, however, to distinguish between Clough's actions that caused injuries and Insys's actions that caused injuries. Perry's claim accrued when she knew or should have known that Insys caused her injuries.

Perry contends that she did not know until September of 2018 that Insys had been involved in a bribery scheme to induce Clough to improperly prescribe Subsys, including the over prescription to her that caused her injuries. Therefore, the

9

issue here is when Perry knew or should have discovered Insys's involvement in Clough's prescription misconduct.

Insys argues that the discovery rule does not save Perry's claims because she could have discovered Insys's potential liability as soon as she experienced the symptoms she describes. In support, Insys states that [Franz v. Purdue Pharma. Co., 2006 WL 455998 (D.N.H. Feb. 22, 2006)](), is "on all fours" with this case. Insys also relies on a New Hampshire Superior Court order finding that claims against Clough and Insys were untimely. Neither case is persuasive here.

1. Franz

Franz is a product liability case in which the plaintiff sued the companies that manufacture, market, and distribute OxyContin, collectively referred to as Purdue, alleging that the drug was defective and unreasonably dangerous because of its addictive qualities. The question there was when the plaintiff reasonably should have known that her injuries were caused by OxyContin, which was manufactured by Purdue. The court reasoned that when the plaintiff was hospitalized because of OxyContin related illness, she knew or should have known of the addictive qualities of the drug, which was manufactured and marketed by Purdue. Id. at *3.

In this case, Perry is not bringing a product liability claim and does not allege that there is anything wrong with Subsys. Instead, she alleges that Insys caused her injuries by bribing and otherwise inducing Clough to prescribe Subsys to her for knee pain, when the drug is only approved for break through cancer pain, and to prescribe Subsys at dosages far in excess of the approved amounts. In other words, Insys's conduct that is at issue in this case is the alleged bribery and kickback scheme with Clough.[4] For that reason, Franz is not "on all fours" with this case and is not persuasive authority to find the claims are time barred.

2. Superior Court Case

In the superior court case, the plaintiffs brought suit against Clough, the PainCare clinic, doctors at the PainCare clinic, and Insys, alleging claims of negligence, medical malpractice, respondeat superior, and loss of consortium. Doc. 8-2; Kyle v. Clough, 219-2018-CV-00163 (Strafford Count Sup. Ct. Sept. 20, 2018). Considering the claims together, the court

---

[4] Insys does not explain why Perry's withdrawal symptoms would have put her on notice that Insys was involved in a scheme with Clough to prescribe Subsys for non-approved uses and at much higher dosages than had been approved. Unlike the plaintiff in Franz, Perry does not claim that Subsys was defective or unreasonably dangerous or that Insys represented that Subsys would not cause addiction or withdrawal symptoms.

11

found that they arose when Clough abruptly discontinued Subsys in September of 2014 and that the discovery rule did not apply because the plaintiffs knew about the high prescription levels, the changes, and their injuries. The claims were dismissed.

The plaintiffs then moved to amend their complaint to add a claim of fraud against Insys. Doc. 8-3. Although Insys objected, the court allowed the amendment. Id. Therefore, that case was not resolved completely on the statute of limitations issue and suggests that a separate fraud claim against Insys would be evaluated differently from the limitations analysis that involved Clough. In any event, this court does not find the analysis in Kyle persuasive to show that the discovery rule would not apply here.

3. Result

Insys provides no factual basis or legal theory to show that Perry knew or should have known of its alleged kickback and bribery scheme with Clough before September of 2018. Insys does not show that Perry could have reasonably discovered that scheme earlier. Therefore, the causal connection was missing until Perry had reason to know of Insys's alleged scheme, which she alleges did not happen until September of 2018. As a result, Insys has not shown that Perry's claims are barred by the statute of limitations.

12

B.  Fraudulent Concealment

Perry also contends that the fraudulent concealment rule applies to toll the limitations period.  "[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam, 128 N.H. 162, 165 (1986).  The equitable purpose of the fraudulent concealment rule in tolling the limitations period is to prevent the wrongdoer from receiving and keeping the benefit of its fraudulent conduct.  Lakeman v. LaFrance, 102 N.H. 300, 303 (1959).

Insys argues that the fraudulent concealment rule does not apply because it had no relationship with Perry, it did not take any affirmative act to prevent her from acquiring information, and she should have discovered its scheme when she became ill. Perry contends that Insys's actions were fraudulent, illegal, and necessarily covert.

As is explained above, the limitations period is tolled by the discovery rule.  In addition, however, the allegations of Insys's efforts to induce Clough to improperly prescribe Subsys to Perry and the subterfuge Insys used to hide improper

13

prescriptions and the kickback scheme would also support application of the fraudulent concealment rule.[5]

II. Fraud Claim

Insys moves to dismiss the fraud claim on the ground that Perry does not state a cognizable claim. Under New Hampshire law, to state a fraud claim, a plaintiff must allege facts that show "the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Snierson v. Scruton, 145 N.H. 73, 77 (2000). The plaintiff must also establish that her reliance was justified. Id. Fraud may consist of the intentional concealment of a material fact. Leavitt v. Stanley, 132 N.H. 727, 729 (1990) (citing Batchelder v. N. Fire Lites, Inc., 630 F. Supp. 1115, 1118 (D.N.H. 1986) (citing LeClerc v. Ins. Co., 93 N.H. 234, 237 (1944)). For "a failure to disclose to be actionable fraud, there must be a duty arising from the relation of the parties to so disclose." Batchelder, 630 F. Supp. at 1118.

In support of her fraud claim, Perry alleges actions by Insys and its sales representatives to conceal the payments made

---

[5] Under New Hampshire law, the fraudulent concealment rule for purposes of tolling the statute of limitations is different from a cause of action for fraud. Cf. Bricker, 128 N.H. at 165, with Batchelder, 630 F. Supp. at 1118.

14

to Clough and to improperly obtain insurance coverage for Subsys prescriptions. She does not allege any false representations that Insys made to her or any material fact that Insys concealed from her, when it had a duty to disclose. In other words, Perry alleges facts that might show fraud by Insys against insurance companies and improper or illegal payments to Clough, but she does not allege facts that show that Insys defrauded her.

Perry argues in her objection that it is not necessary for Insys to make a false representation to her, and instead fraud may be based on a false representation to "another". Even if that were true, which the court does not determine, Perry has not alleged a cognizable claim based on that theory. She contends that Insys made false representations to unnamed others, including insurance companies, but she does not allege how she reasonably relied on those representations or that she even knew about them. That is all missing from the complaint.[6]

To the extent Perry relies on a theory of fraud by omission, she fails to allege facts to support the claim. She does not allege what Insys concealed from her or that Insys owed her a duty to disclose information that was concealed. Given

---

[6] Perry does not allege or argue that Insys is responsible for misrepresentations or omissions by Clough. See Patch v. Arsenault, 139 N.H. 313, 317 (1995).

15

the requirements of Federal Rule of Civil Procedure 9(b), these facts cannot be presumed.

While the circumstances might suggest fraud, Perry has not alleged facts to support a claim that she was the victim of fraud by Insys. She also has not articulated a cognizable fraud theory in her objection to Insys's motion.[7] Therefore, based on the allegations in the complaint, Perry has not alleged a fraud claim against Insys.

III. Civil Conspiracy

Insys moves to dismiss Perry's civil conspiracy claim on the ground that New Hampshire does not recognize a separate claim for civil conspiracy. Insys contends that because the civil conspiracy claim is based on the fraud claim, which is deficient, the civil conspiracy claim also fails to state a cognizable claim. Perry argues that the civil conspiracy claim is adequately alleged.

Under New Hampshire law, "'[t]o state a claim for civil conspiracy the plaintiff must allege: (1) two or more persons (including corporations); (2) an object to be accomplished

---

[7] In support of her fraud claim, Perry quotes a statement about fraudulent concealment from a case filed against Insys in a court in Leavenworth County, Kansas. New Hampshire substantive law governs the claims in this case. It is not clear how the quote shows that Perry has alleged sufficient facts to show fraud by omission under New Hampshire law.

16

(i.e., an unlawful object . . .); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'"[8] Laura v. Gr. Lakes Higher Ed. Guaranty Corp., 2018 DNH 023, 2018 WL 671174, at *8 (D.N.H. Feb. 1, 2018) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)); see also Isaacs v. Trs. Of Dartmouth Coll., 2018 WL 734182, at *11 (D.N.H. Feb. 5, 2018). An action for civil conspiracy is aimed at the damage that it caused. In re Appeal of Armaganian, 147 N.H. 158, 162 (2001).

Perry alleges that Clough and Insys conspired through the bribery and kickback scheme to prescribe Subsys to her for a nonapproved use and in dosages that exceeded the highest approved amounts. The object to be accomplished by the conspiracy between Clough and Insys was for Insys to make money from the sale of Subsys that it would not have made if Subsys had been prescribed only for appropriate treatment and in approved dosages. The means of accomplishing that object was

---

[8] Although the "unlawful object" or "unlawful means" elements of civil conspiracy may be satisfied by an underlying tort, the New Hampshire Supreme Court has not held that the underlying tort must also be a viable claim against the named defendant. "[Civil conspiracy] is a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrators." 15A C.J.S., Conspiracy § 1 (March 2019 Update) (earlier edition quoted by the New Hampshire Supreme Court in Jay Edwards, 130 N.H. at 47, for the elements of a claim for civil conspiracy). In any case, Perry alleges torts other than fraud.

17

the alleged bribery and kickback scheme used by Insys to sell Subsys, which was arguably unlawful.⁹ The alleged result of the conspiracy between Insys and Clough was that Perry suffered from the effects of over prescription of an addictive drug that was not medically necessary or even approved for her treatment.

Therefore, the civil conspiracy claim is not necessarily dependent on the fraud claim. Perry alleges facts that state a claim for civil conspiracy.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 13) is granted as to the fraud claim, Count I, and is otherwise denied.

SO ORDERED.

                                                _/s/ Joseph A. DiClerico, Jr._
                                                Joseph A. DiClerico, Jr.
                                                United States District Judge

May 14, 2019
cc: Michael P. Rainboth, Esq.
    Michael D. Ramsdell, Esq.
    Adam P. Schwartz, Esq.
    David J. Walz, Esq.

---

⁹ See, e.g., United States v. Clough, 17-cr-37-JL (D.N.H. Dec. 18, 2018) (jury verdict against Clough on charges of conspiracy to pay and receive kickbacks in violation of 18 U.S.C. § 371 and receiving kickbacks in violation of 42 U.S.C. § 1320a-7b(b) from a "pharmaceutical company"); United States v. Gurry, 16-cr-10343-ADB (D. Mass. May 2, 2019) (jury verdict against Insys executives).